**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 13** |
| **DONALD F. BLIZZARD, Jr.,** | : | **BANKRUPTCY NO. 26-11617-AMC** |
| **Debtor.** | : | |

**OBJECTION OF P&I INSURANCE SERVICES, LLC TO**
**CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN**

P&I Insurance Services, LLC ("P&I"), by and through its undersigned counsel, hereby Objects to the Confirmation of the Chapter 13 Plan of Donald F. Blizzard, Jr. (the "Debtor" or "Blizzard"), because the Debtor is ineligible to be a debtor in Chapter 13 and the case was filed in bad faith, and in support thereof, states as follows:

## I. PARTIES AND JURISDICTION

1. On or about April 17, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code"). The Debtor was in a previous Chapter 13 proceeding under case number 23-12669-amc that was dismissed on or about August 2, 2024, upon the Chapter 13 Trustee's Motion to Dismiss for Failure to Make Plan Payments.

2. P&I is a Pennsylvania limited liability company with a primary place of business located at 1489 Baltimore Pike, Suite 201, Springfield, Pennsylvania and conducts business as a licensed insurance broker engaged in the sales, service, procurement of insurance and risk management advisory services.

3. This Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 1325 and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3015.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

## II. FACTUAL BACKGROUND

### A. Prepetition Litigation.

5. Blizzard worked for P&I as an insurance producer beginning in the fall of 2009. "Producers" are employees who are licensed to sell insurance and must hold a producer license for the line of policies that they sell, such as casualty or property insurance.

6. In connection with his employment, Blizzard and P&I executed a document entitled "P&I Insurance Services, LLC — Producer Agreement" ("Producer Agreement"), which enabled Blizzard to receive allocated commissions on sales.

7. As an employee of P&I, Blizzard had access to P&I's valuable confidential, proprietary and trade secret information and was under a duty to keep such information confidential during and after his employment. Among other items, such information included the identity of P&I's clients, the clients' financial information, and details of their policies such as renewal dates and premiums. Such information also included P&I's marketing plans. As a producer, Blizzard had a high level of interaction with P&I's clients and potential clients. Blizzard's express duties included: (a) gathering client information; (b) setting up client appointments for P&I; (c) placing accounts and policies with P&I; and (d) assisting as a customer service representative and marketing person in the placement of new business and securing renewals.

8. The Producer Agreement provided restrictions on, among other things, Blizzard's post-employment activities, confidentiality and non-disclosure obligations. These restrictive covenants included prohibiting Blizzard from notifying or allowing notice to any of his commission accounts that he is no longer affiliated with P&I or affiliated with a direct or

indirect competitor for a period of 36 months after termination of the Producer Agreement; prohibiting Blizzard from soliciting or sharing any information regarding P&I's accounts with any other person or firm for a period of 36 months after termination of the Producer Agreement; prohibiting Blizzard from directly or indirectly soliciting any of P&I's past, present or future clients that were then under solicitation by P&I for a period of three (3) years after termination of the Producer Agreement; and prohibiting Blizzard from divulging, disclosing or communicating to any third party, without P&I's written consent, P&I's proprietary and confidential information, including customer lists, business affairs, process information, procedures, forms and records, organizational files and all aspects of P&I's business which constitute confidential and business information for a period of ten (10) years after termination of the Producer Agreement.

9. While still employed by P&I, Blizzard began plotting to leave the firm and take accounts with him.

10. On January 17, 2019, P&I terminated Blizzard's employment.

11. Immediately following his termination, Blizzard began actively contacting P&I clients through a variety of means using confidential and proprietary information and trade secrets misappropriated from P&I.

12. Blizzard initially found employment with Risk Averse Insurance LLC ("Risk Averse"), which engages in the sale and marketing of insurance products similar to P&I. Blizzard embarked on a pattern of contacting P&I's clients who had upcoming renewal dates and requesting that they either cancel their policy and obtain a new policy through Risk Averse or sign a document that would change the broker of record from P&I to Risk Averse.

13. Blizzard caused over 50 of P&I's clients to terminate their relationship with P&I, the loss of over 100 client policies, and the loss of related commissions. This resulted in significant financial loss to P&I and unjust enrichment to Blizzard.

14. On November 24, 2020, P&I initiated an action against Risk Averse in federal district court for the Eastern District of Pennsylvania ("Risk Averse Litigation").

15. Blizzard was not named as a party in the Risk Averse Litigaiton but, given that the action was based on his misconduct, was served with written discovery requests and required to appear for a deposition. Blizzard ignored P&I's discovery requests, necessitating multiple rounds of motions practice and resulting in court orders against Blizzard.

16. On August 26, 2021, during the time Blizzard was refusing to comply with discovery in the Risk Averse Litigation, Blizzard initiated an AAA arbitration against P&I, falsely claiming P&I failed to pay him his final paycheck.

17. Blizzard withdrew the arbitration days prior to his scheduled deposition. Notwithstanding the withdrawal, P&I was forced to incur more than $10,000 in AAA filing and arbitrator fees as a result of the commencement of the arbitration.

18. In early January 2022, P&I and Risk Averse were engaged in settlement discussions with respect to the Risk Averse Litigation.

19. On or about January 10, 2022, Blizzard participated in discussions regarding settlement of the Risk Averse Litigation. During those discussions, P&I offered to release Blizzard from liability in exchange for, among other things, transfer of Blizzard's 100,000 membership interest units ("Blizzard Interest") of Global InterXchange LLC ("GIX").

20. GIX is a telecommunications start up engaged in the construction and leasing of fiber optic cable between New Jersey and lower Manhattan. The Blizzard Interest is believed to be Blizzard's primary asset.

21. Blizzard refused to transfer the Blizzard Interest in conjunction with the settlement of the Risk Averse Litigation.

22. P&I and Risk Adverse continued settlement discussions without Blizzard's participation.

23. Specifically, P&I revised its demands to include an exclusion in the applicable release that would allow P&I to pursue Blizzard after it settled with Risk Adverse.

24. On or about January 11, 2022, Blizzard learned about P&I's proposal to exclude him from any release and its intention to pursue him individually.

25. On or about January 12, 2022, Blizzard contacted GIX's managers and requested that they approve the transfer of the Blizzard Interest to a family member or other Blizzard affiliate. On or about January 24, 2022, P&I commenced AAA arbitration action 01-22-0000-3380 (the "Arbitration Action") against Blizzard for Violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836, et seq.); Violation of the Pennsylvania Uniform Trade Secrets Act (12 Pa. C.S. § 5301, et seq.); Breach of Contract; Tortious Interference; Unfair Competition; and Unjust Enrichment.

26. P&I filed Claimant's Application for Emergency Measures of Protection Pursuant to Commercial Rule 37 & 38 in the Arbitration Action seeking to enjoin Blizzard from dissipating the Blizzard Interest.

27. On February 14, 2022, after a hearing, the arbitrator issued an order prohibiting Blizzard from "transferring, selling, assigning or hypothecating his membership interest in GIX

to any person, entity, trust or other party during the pendency of [the] Arbitration without prior approval of the Arbitrator."

28. Following entry of the arbitrator's emergency order, the arbitration proceeded to its conclusion.

29. After a multiday evidentiary hearing, the arbitrator, on November 10, 2022, found in favor of P&I on all five counts of the Arbitration Action Complaint and awarded P&I lost profits in the amount of $537,370.00, plus exemplary damages in the amount of $1,074,740.00 (the "Arbitration Award").

30. On March 9, 2023, in response to P&I's Petition to Confirm Arbitration Award, the United States District Court for the Eastern District of Pennsylvania (Misc. Action 2:23-mc-0031-NIQA) entered an Order of Judgment in the amount of One Million Six Hundred Twelve One Hundred and Ten Dollars ($1,612,110.00) in favor of P&I and against Blizzard (the "EDPA Judgment").

31. P&I then transferred and recorded the EDPA Judgment as a foreign judgment in both New Jersey and in the Court of Common Pleas, Delaware County, Pennsylvania. (collectively, with the EDPA Judgment, the "Judgment").

32. In response to the application of P&I, on July 21, 2023, the Superior Court of New Jersey, Civil Division, Mercer County (MER-DJ-050181-23) entered an Order Charging Defendant's Interests in Global InterXchange (the "Charging Order"). A true and correct copy of the Charging Order is made a part hereof and is attached hereto as Exhibit "A".

33. The Charging Order found that P&I holds an enforceable judgment in the amount of $1,612,100.00 which had not been satisfied and that Blizzard holds an interest in GIX and ordered that:

(a) Blizzard's interest in GIX is charged with a lien until the Judgment has been satisfied in full;

(b) All distributions made by GIX to Blizzard's interest in GIX shall instead be paid to P&I, through its attorneys;

(c) Blizzard is prohibited from receiving any other money or assets from GIX; and

(d) Blizzard must remit to P&I any moneys or assets received from GIX as well provide P&I with copies of any financial information (e.g. financial statements, notification of distributions, Form K-1) received from GIX.

**B. The Debtor's Dismissed 2023 Chapter 13 Bankruptcy Proceeding.**

34. On or about September 7, 2023, shortly after the entry of the Charging Order, Debtor filed a Chapter 13 petition commencing case number 23-12669-amc (the "2023 Bankruptcy Case").

35. On or about September 26, 2023, the Bankruptcy Court entered an Order dismissing the Debtor's bankruptcy case for failure to file the required schedules and statements [D.I. 11] and the case was subsequently closed on November 27, 2023. On or about November 29, 2023, the Debtor filed a Motion to Vacate and a Motion to Reopen Chapter 13 Case. [D.I. 14 and 15] which resulted in the Bankruptcy Court entering, on or about February 16, 2024, an Order Granting the Motion to Vacate and Motion to Reopen Chapter 13 Case. [D.I. 38].

36. On or about June 10, 2024, the Chapter 13 Trustee filed a second Motion to Dismiss Case for Failure to make Plan Payments [D.I. 47] resulting in the Court entering an Order Granting the Motion to Dismiss Case [D.I. 66].

**C. The Settlement Agreement Breached by Debtor.**

37. Following the dismissal of the Debtor's 2023 Bankruptcy Case, P&I and Blizzard discussed the resolution of the Judgment. On or about January 3, 2025, P&I and Blizzard entered into a Settlement Agreement and Mutual Release ("Settlement Agreement") which, *inter alia*,

provided for the assignment and transfer of the Blizzard Interest in the 100,000 membership interest units in GIX, the immediate payment of $20,000.00 upon execution of the Settlement Agreement, and the scheduled payment of a deferred amount of $120,000.00 timed on the pledged sale of a non-residential real property Condominium owned by Blizzard at 838B Putnam Blvd., Wallingford, PA 19086 (the "Condominium"). A true and correct copy of the Settlement Agreement is made a part hereof and is attached hereto as Exhibit "B".

38. Blizzard rents the Condominium to his sister in law, Molly Olivia Eckman ("Eckman").

**D. Eckman Contempt and Bankruptcy.**

39. In connection with the enforcement of the Judgment in the Court of Common Pleas of Delaware County (Civ-2023-003999), P&I served Eckman with discovery in aid of execution and a Writ of Execution and Garnishment.

40. Eckman refused to comply, which resulted in the entry by the Court on April 7, 2026, of an Order Granting Motion for Contempt of Writ of Execution ("Contempt Order"), which granted judgment in the amount of $50,864.87 against Eckman in favor of P&I (i) for rent payments of $38,775.00 improperly made to Blizzard instead of the Sheriff; (ii) for $12,089.87 in attorney's fees; and (iii) requiring Eckman to make future rent payments pertaining to the Condominium directly to P&I. A true and correct copy of the Contempt Order is made a part hereof and is attached hereto as Exhibit "C".

41. On April 17, 2026, the same day Blizzard filed his instant bankruptcy, Eckman through common counsel, filed a petition commencing case number 26-11634-djb.

**E. Blizzard's 2026 Bankruptcy.**

42. Following the imposition contempt sanctions against his sister-in-law Eckman, Blizzard filed his second bankruptcy case on April 17, 2026, commencing the above-captioned proceeding.

43. A review of the Debtor's Schedules and Statements reveals Blizzard's attempt to use this bankruptcy proceeding to thwart the legitimate efforts of P&I to enforce its Judgment.

44. This bankruptcy is essentially a two-party dispute as Blizzard has few creditors other than P&I.

45. Schedule D (Secured Claims) consists of Blizzard's residence 1138 Putnam Blvd., Wallingford, PA 19086 (in which he has $36,000 of stated equity) and the Condominium (in which he has $80,000 of stated equity).

46. Schedule E/F (Unsecured Claims) lists total unsecured claims of $1,737,569.00. P&I is scheduled with an unsecured claim of $1,700,000.00. The Debtor scheduled only four other unsecured claims, all credit card debt, totaling only $37,569.00.

47. On June 25, 2026, 2024, P&I filed a proof of claim in the Debtor's bankruptcy case in the amount of $1,934,160.49, consisting of the Judgment amount of $1,612,110.00, plus accrued post-judgment interest, and less certain credits for GIX transfers ("Proof of Claim"). [Claim No. 10].

48. Schedule G lists two auto leases which are apparently current and have or will terminate shortly on term.

49. The § 341 Meeting of Creditors has yet to take place, having been postponed from the originally scheduled date of June 26, 2026 to September 11, 2026, due to Debtor's failure to file mandatory documentation.

50. On or about May 15, 2026, Debtor filed a Chapter 13 Plan (the "Plan") [D.I. 19]. In Part 2 (Plan Payment), § 2(a), the Debtor proposes a base plan of $177,664.20, paid through 60 monthly payments of $2,961.07. Part 2, § 2(e) (Estimated Distribution) provides for the surrender of the Condominium located at 893B Putnam Blvd., Wallingford, PA that the Debtor rents to Eckman.

51. The Debtor in Statement of Financial Affairs (Part 7, Par. 18) and Schedule C (Property Claimed as Exempt) inexplicably claims ownership and exemptions in the Blizzard Interest in the 100,000 GIX shares despite the Charging Order imposing a lien and the transfer of the Blizzard Interest in the 100,000 GIX shares to P&I pursuant to the Settlement Agreement. The deadline to object to exemptions is 30 days after the completion of the § 341 Meeting, which is currently scheduled for September 11, 2026.

## IV. OBJECTION TO THE DEBTOR'S CHAPTER 13 PLAN

### A. Confirmation Should be Denied Because Blizzard is Ineligible to be a Chapter 13 Debtor

52. Debtor's Plan should not be confirmed because Blizzard's scheduled debts exceed the limits of 11 U.S.C. § 109 for eligibility under Chapter 13.

53. Section 109(e) of the Bankruptcy Code limits Chapter 13 eligibility to individuals with regular income whose noncontingent, liquidated, unsecured debts and noncontingent, liquidated, secured debts do not exceed the statutory limits in effect on the petition date.

54. For cases filed between April 1, 2025 and March 31, 2028, the applicable Chapter 13 unsecured debt limit is $526,700.00, and the secured debt limit is $1,580,125.00.

55. Debtor's own schedules list unsecured claims totaling $1,737,569.00, which exceeds the applicable unsecured debt limit by $1,210,869.00.

56. The scheduled unsecured debt therefore far exceeds the maximum unsecured debt permitted for Chapter 13 eligibility under 11 U.S.C. § 109(e).

57. Because Debtor is not eligible to be a debtor under Chapter 13, the Debtor's Plan should not be confirmed.

**B. Debtor Filed His Petition in Bad Faith and Confirmation Should be Denied**

58. Pursuant to Section 1325 of the Bankruptcy Code, the Court may not confirm a Chapter 13 Plan that has not been proposed in good faith. 11 U.S.C. § 1325(a)(3).

59. P&I does not accept the Plan.

60. The Plan was not filed in good faith.

61. "The focus of the good faith inquiry under both Sections 1307 and 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code provisions." In re Devine, No. 96-17346DWS, 1998 Bankr. Lexis 805, at *38 (E.D.Pa. July 7, 1998).

62. The Third Circuit Court of Appeals has adopted the following nonexhaustive list of factors to evaluate whether a plan has been proposed in good faith:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996); see also In re Mondelli, 558 Fed. Appx. 260 (3d Cir. N.J. 2014).

63. All of the Lilley factors are met here.

64. First, P&I's claims arose out of the Debtor's fraud and deception and are potentially nondischargeable pursuant to Sections 523(a)(2), (a)(4) and (a)(6) of the Bankruptcy Code because the Debtor obtained money and property through false pretenses, false representations and/or actual fraud and through fraud and/or defalcation while acting in a fiduciary capacity and for committing a willful and malicious injury.

65. Debtor deceptively used his access to proprietary and confidential client information to steal clients from P&I in violation of his fiduciary obligations under the Producer Agreement.

66. While P&I has not yet filed a complaint to determine the dischargeability of its debts, the deadline to do so has been extended by consent to October 3, 2026. P&I intends to examine the Debtor at the upcoming § 341 Meeting and may file a complaint pursuant to Sections 523 and 1328 of the Bankruptcy Code.

67. Next, the timing and motive of the filing of the petition clearly appears to be singularly intended as litigation tactic to disrupt P&I's efforts to enforce the Judgment.

68. The Debtor is not repaying any arrearages in the Plan and the Schedules do not reveal any significant financial stress which would have necessitated a bankruptcy filing other than P&I's Judgment.

69. The Debtor does not appear to have made any meaningful progress towards plan confirmation. His 2023 Bankruptcy Case was dismissed. The Chapter 13 Trustee in this proceeding has filed a Motion to Dismiss on August 4, 2026 [D.I. 27] for Debtor's ineligibility to be a debtor under Chapter 13 and failure to make payments to the Trustee as required by § 1326.

70. Next, the Debtor's fraudulent actions have had a deleterious effect on P&I. The Debtor's fraudulent actions have inflicted substantial financial and reputational harm on P&I.

71. The Debtor's treatment of P&I while in a position of trust, weighs heavily in favor of the Court determining that this bankruptcy was filed in bad faith.

72. The Plan proposes to surrender Condominium real property located at 838 B. Putnam Blvd. Wallingford, PA 19086 but there is scheduled equity of $80,000.00 (fmv $180,000 and mortgage $100,000).

73. For the aforementioned reasons, P&I respectfully submits that the Debtor's Plan is not confirmable and this Court should enter an Order denying confirmation of the Plan.

WHEREFORE, P&I hereby requests that this Honorable Court enter the attached form of Order sustaining the objection to the confirmation of the Debtor's Plan and such other relief as is just and equitable.

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

Dated: September 4, 2026

By: */s/ D. Alexander Barnes*

D. Alexander Barnes, Esquire
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: 215-665-3184
E-mail: alexander.barnes@obermayer.com

*Counsel to P&I Insurance Services, LLC*