**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | **CHAPTER 13** |
| **In re:** | : | |
| | : | **BANKRUPTCY NO. 26-11617-AMC** |
| **DONALD F. BLIZZARD, Jr.,** | : | |
| | : | **Hearing Date: September 29, 2026** |
| **Debtor.** | : | **Hearing Time: 11:00 a.m.** |
| | : | **Hearing Location: Courtroom #4** |

**MOTION OF P&I INSURANCE SERVICES, LLC TO**
**DISMISS DEBTOR'S CHAPTER 13 CASE**

P&I Insurance Services, LLC ("P&I"), by and through its undersigned counsel, hereby requests the entry of an order dismissing or converting the Chapter 13 case of Donald F. Blizzard, Jr. (the "Debtor" or "Blizzard") pursuant to 11 U.S.C. §1307 (the "Motion") due to Debtor's ineligibility to be a Chapter 13 debtor under 11 U.S.C. §109(e) and the failure of Debtor to file the bankruptcy proceeding with requisite good faith under 11 U.S.C. §1307, and in support thereof, states as follows:

## I. PARTIES AND JURISDICTION

1. On or about April 17, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code"). The Debtor was in a previous Chapter 13 proceeding under case number 23-12669-amc that was dismissed on or about August 2, 2024, upon the Chapter 13 Trustee's Motion to Dismiss for Failure to Make Plan Payments.

2. P&I is a Pennsylvania limited liability company with a primary place of business located at 1489 Baltimore Pike, Suite 201, Springfield, Pennsylvania and conducts business as a licensed insurance broker engaged in the sales, service, procurement of insurance and risk management advisory services.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core matter within the meaning of 28 U.S.C. §157.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

5. The statutory predicates for the relief requested herein are 11 U.S.C. §§109 and 1307(c); Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1017 and 9014.

## II. FACTUAL BACKGROUND

### A. Prepetition Litigation.

6. Blizzard worked for P&I as an insurance producer beginning in the fall of 2009. "Producers" are employees who are licensed to sell insurance and must hold a producer license for the line of policies that they sell, such as casualty or property insurance.

7. In connection with his employment, Blizzard and P&I executed a document entitled "P&I Insurance Services, LLC — Producer Agreement" ("Producer Agreement"), which enabled Blizzard to receive allocated commissions on sales.

8. As an employee of P&I, Blizzard had access to P&I's valuable confidential, proprietary and trade secret information and was under a duty to keep such information confidential during and after his employment. Among other items, such information included the identity of P&I's clients, the clients' financial information, and details of their policies such as renewal dates and premiums. Such information also included P&I's marketing plans. As a producer, Blizzard had a high level of interaction with P&I's clients and potential clients. Blizzard's express duties included: (a) gathering client information; (b) setting up client appointments for P&I; (c) placing accounts and policies with P&I; and (d) assisting as a customer service representative and marketing person in the placement of new business and securing renewals.

9. The Producer Agreement provided restrictions on, among other things, Blizzard's post-employment activities, confidentiality and non-disclosure obligations. These restrictive covenants included prohibiting Blizzard from notifying or allowing notice to any of his commission accounts that he is no longer affiliated with P&I or affiliated with a direct or indirect competitor for a period of 36 months after termination of the Producer Agreement; prohibiting Blizzard from soliciting or sharing any information regarding P&I's accounts with any other person or firm for a period of 36 months after termination of the Producer Agreement; prohibiting Blizzard from directly or indirectly soliciting any of P&I's past, present or future clients that were then under solicitation by P&I for a period of three (3) years after termination of the Producer Agreement; and prohibiting Blizzard from divulging, disclosing or communicating to any third party, without P&I's written consent, P&I's proprietary and confidential information, including customer lists, business affairs, process information, procedures, forms and records, organizational files and all aspects of P&I's business which constitute confidential and business information for a period of ten (10) years after termination of the Producer Agreement.

10. While still employed by P&I, Blizzard began plotting to leave the firm and take accounts with him.

11. On January 17, 2019, P&I terminated Blizzard's employment.

12. Immediately following his termination, Blizzard began actively contacting P&I clients through a variety of means using confidential and proprietary information and trade secrets misappropriated from P&I.

13. Blizzard found employment with Risk Averse Insurance LLC ("Risk Averse"), which engages in the sale and marketing of insurance products similar to P&I. Blizzard

embarked on a pattern of contacting P&I's clients who had upcoming renewal dates and requesting that they either cancel their policy and obtain a new policy through Risk Averse or sign a document that would change the broker of record from P&I to Risk Averse.

14. Blizzard caused over 50 of P&I's clients to terminate their relationship with P&I, the loss of over 100 client policies, and the loss of related commissions. This resulted in significant financial loss to P&I and unjust enrichment to Blizzard.

15. On November 24, 2020, P&I initiated an action against Risk Averse in federal district court for the Eastern District of Pennsylvania ("Risk Averse Litigation").

16. Blizzard was not named as a party in the Risk Averse Litigaiton but, given that the action was based on his misconduct, was served with written discovery requests and required to appear for a deposition. Blizzard ignored P&I's discovery requests, necessitating multiple rounds of motions practice and resulting in court orders against Blizzard.

17. On August 26, 2021, during the time Blizzard was refusing to comply with discovery in the Risk Averse Litigation, Blizzard initiated an AAA arbitration against P&I falsely claiming P&I failed to pay him his final paycheck.

18. Blizzard withdrew the arbitration days prior to his scheduled deposition. Notwithstanding the withdrawal, P&I was forced to incur more than $10,000.00 in AAA filing and arbitrator fees as a result of the commencement of the arbitration.

19. In early January 2022, P&I and Risk Averse were engaged in settlement discussions with respect to the Risk Averse Litigation.

20. On or about January 10, 2022, Blizzard participated in discussions regarding settlement of the Risk Averse Litigation. During those discussions, P&I offered to release

Blizzard from liability in exchange for, among other things, transfer of Blizzard's 100,000 membership interest units ("Blizzard Interest") of Global InterXchange LLC ("GIX").

21. GIX is a telecommunications start up engaged in the construction and leasing of fiber optic cable between New Jersey and lower Manhattan. The Blizzard Interest is believed to be Blizzard's primary asset.

22. Blizzard refused to transfer the Blizzard Interest in conjunction with the settlement of the Risk Averse Litigation.

23. P&I and Risk Adverse continued settlement discussions without Blizzard's participation.

24. Specifically, P&I revised its demands to include an exclusion in the applicable release that would allow P&I to pursue Blizzard after it settled with Risk Adverse.

25. On or about January 11, 2022, Blizzard learned about P&I's proposal to exclude him from any release and its intention to pursue him individually.

26. On or about January 12, 2022, Blizzard contacted GIX's managers and requested that they approve the transfer of the Blizzard Interest to a family member or other Blizzard affiliate. On or about January 24, 2022, P&I commenced AAA arbitration action 01-22-0000-3380 (the "Arbitration Action") against Blizzard for Violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836, et seq.); Violation of the Pennsylvania Uniform Trade Secrets Act (12 Pa. C.S. § 5301, et seq.); Breach of Contract; Tortious Interference; Unfair Competition; and Unjust Enrichment.

27. P&I filed Claimant's Application for Emergency Measures of Protection Pursuant to Commercial Rule 37 & 38 in the Arbitration Action seeking to enjoin Blizzard from dissipating the Blizzard Interest.

28. On February 14, 2022, after a hearing, the arbitrator issued an order prohibiting Blizzard from "transferring, selling, assigning or hypothecating his membership interest in GIX to any person, entity, trust or other party during the pendency of [the] Arbitration without prior approval of the Arbitrator."

29. Following entry of the arbitrator's emergency order, the arbitration proceeded to its conclusion.

30. After a multiday evidentiary hearing, the arbitrator, on November 10, 2022, found in favor of P&I on all five counts of the Arbitration Action Complaint and awarded P&I lost profits in the amount of $537,370.00, plus exemplary damages in the amount of $1,074,740.00 (the "Arbitration Award").

31. On March 9, 2023, in response to P&I's Petition to Confirm Arbitration Award, the United States District Court for the Eastern District of Pennsylvania (Misc. Action 2:23-mc-0031-NIQA) entered an Order of Judgment in the amount of One Million Six Hundred Twelve One Hundred and Ten Dollars ($1,612,110.00) in favor of P&I and against Blizzard (the "EDPA Judgment").

32. P&I then transferred and recorded the EDPA Judgment as a foreign judgment in both New Jersey and in the Court of Common Pleas, Delaware County, Pennsylvania. (collectively, with the EDPA Judgment, the "Judgment").

33. In response to the application of P&I, on July 21, 2023, the Superior Court of New Jersey, Civil Division, Mercer County (MER-DJ-050181-23) entered an Order Charging Defendant's Interests in Global InterXchange (the "Charging Order"). A true and correct copy of the Charging Order is made a part hereof and is attached hereto as Exhibit "A".

34. The Charging Order found that P&I holds an enforceable judgment in the amount of $1,612,100.00 which had not been satisfied and that Blizzard holds an interest in GIX and ordered that:

(a) Blizzard's interest in GIX is charged with a lien until the Judgment has been satisfied in full;

(b) All distributions made by GIX to Blizzard's interest in GIX shall instead be paid to P&I, through its attorneys;

(c) Blizzard is prohibited from receiving any other money or assets from GIX; and

(d) Blizzard must remit to P&I any moneys or assets received from GIX as well provide P&I with copies of any financial information (e.g. financial statements, notification of distributions, Form K-1) received from GIX.

**B. The Debtor's Dismissed 2023 Chapter 13 Bankruptcy Proceeding.**

35. On or about September 7, 2023, shortly after the entry of the Charging Order, Debtor filed a Chapter 13 petition commencing case number 23-12669-amc (the "2023 Bankruptcy Case").

36. On or about September 26, 2023, the Bankruptcy Court entered an Order dismissing the Debtor's bankruptcy case for failure to file the required schedules and statements [D.I. 11] and the case was subsequently closed on November 27, 2023. On or about November 29, 2023, the Debtor filed a Motion to Vacate and a Motion to Reopen Chapter 13 Case. [D.I. 14 and 15] which resulted in the Bankruptcy Court entering, on or about February 16, 2024, an Order Granting the Motion to Vacate and Motion to Reopen Chapter 13 Case. [D.I. 38].

34. On or about June 10, 2024, the Chapter 13 Trustee filed a second Motion to Dismiss Case for Failure to make Plan Payments [D.I. 47] resulting in the Court entering an Order Granting the Motion to Dismiss Case [D.I. 66].

**C. The Settlement Agreement Breached by Debtor.**

35. Following the dismissal of the Debtor's 2023 Bankruptcy Case, P&I and Blizzard discussed the resolution of the Judgment. On or about January 3, 2025, P&I and Blizzard entered into a Settlement Agreement and Mutual Release ("Settlement Agreement") which, *inter alia*, provided for the assignment and transfer of the Blizzard Interest in the 100,000 membership interest units in GIX, the immediate payment of $20,000.00 upon execution of the Settlement Agreement, and the scheduled payment of a deferred amount of $120,000.00 timed on the pledged sale of a non-residential real property Condominium owned by Blizzard at 838B Putnam Blvd., Wallingford, PA 19086 (the "Condominium"). A true and correct copy of the Settlement Agreement is made a part hereof and is attached hereto as Exhibit "B".

36. Blizzard rents the Condominium to his sister in law, Molly Olivia Eckman ("Eckman").

**D. Eckman Contempt and Bankruptcy.**

37. In connection with the enforcement of the Judgment in the Court of Common Pleas of Delaware County (Civ-2023-003999), P&I served Eckman with discovery in aid of execution and a Writ of Execution and Garnishment.

38. Eckman refused to comply, which resulted in the entry by the Court on April 7, 2026 of an Order Granting Motion for Contempt of Writ of Execution ("Contempt Order"), which granted judgment in the amount of $50,864.87 against Eckman in favor of P&I (i) for rent payments of $38,775 improperly made to Blizzard instead of the Sheriff; (ii) for $12,089.87 in attorneys fees; and (iii) requiring Eckman to make future rent pertaining to the Condominium directly to P&I. A true and correct copy of the Contempt Order is made a part hereof and is attached hereto as Exhibit "C".

39. On April 17, 2026, the same day Blizzard filed his instant bankruptcy, Eckman through common counsel, filed a petition commencing case number 26-11634-djb.

**E. Blizzard's 2026 Bankruptcy.**

40. Following the imposition contempt sanctions against his sister-in-law Eckman, Blizzard filed his second bankruptcy case on April 17, 2026, commencing the above-captioned proceeding.

41. A review of the Debtor's Schedules and Statements reveals Blizzard's attempt to use this bankruptcy proceeding to thwart the legitimate efforts of P&I to enforce its Judgment.

42. This bankruptcy is essentially a two-party dispute as Blizzard has few creditors other than P&I.

43. Schedule D (Secured Claims) consists of Blizzard's residence 1138 Putnam Blvd., Wallingford, PA 19086 (in which he has $36,000 of stated equity) and the Condominium (in which he has $80,000 of stated equity).

44. Schedule E/F (Unsecured Claims) lists total unsecured claims of $1,737,569.00. P&I is scheduled with an unsecured claim of $1,700,000.00. The Debtor scheduled only four other unsecured claims, all credit card debt, totaling only $37,569.00.

45. Schedule G lists two auto leases which are apparently current and have or will terminate shortly on term.

## IV. LEGAL ARGUMENT

**A. The Debtor's Case Should be Dismissed for Ineligibility for Chapter 13.**

46. This Court should dismiss this case as the Debtor is not eligible under chapter 13 because he exceeds the debt limits of subsections 109(a), (e), (g) or (h) of the Bankruptcy Code.

47. Section 109(e) of the Bankruptcy Code limits Chapter 13 eligibility to individuals with regular income whose noncontingent, liquidated, unsecured debts and noncontingent, liquidated, secured debts do not exceed the statutory limits in effect on the petition date.

48. For cases filed between April 1, 2025 and March 31, 2028, the applicable Chapter 13 unsecured debt limit is $526,700.00, and the secured debt limit is $1,580,125.00.

49. Debtor's own schedules list unsecured claims totaling $1,737,569.00, which exceeds the applicable unsecured debt limit by $1,210,869.00.

50. The scheduled unsecured debt therefore far exceeds the maximum unsecured debt permitted for Chapter 13 eligibility under 11 U.S.C. § 109(e).

51. Because Debtor is not eligible to be a debtor under Chapter 13, this case should be dismissed pursuant to 11 U.S.C. §§ 109(e) and 1307(c), or such other authority as the Court deems appropriate.

**B. Debtor Filed His Petition in Bad Faith and Should be Dismissed for Cause under 11 U.S.C. §1307(c).**

52. Debtor's petition was not filed to reorganize debts in good faith or to obtain the protections of Chapter 13 for their intended purpose. Instead, the filing appears to have been used as a litigation tactic to delay, frustrate, or gain leverage in pending non-bankruptcy Judgment execution. The Bankruptcy Code protects the honest debtor seeking meaningful reorganization; it does not permit a debtor to invoke the automatic stay as a litigation weapon while lacking a *bona fide* intent or ability to propose and perform a confirmable Chapter 13 plan.

53. A case may be dismissed or converted for cause. 11 U.S.C. § 1307(c). Section 1307 enumerates a nonexclusive list of causes justifying conversion, but the Court may consider reasons other than those enumerated as grounds for conversion. *See* 11 U.S.C. § 102(3), (5) ("In this Title . . . 'includes' and 'including' are not limiting . . . [and] 'or' is not exclusive.").

Whether to dismiss a case is a question of fact. See In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (describing the good faith inquiry as “a fact intensive determination”).

54. Filing a petition in bad faith constitutes “cause” for dismissal or conversion under section 1307. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 373 (2007) (“Bankruptcy courts . . . routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words ‘for cause.’”). A bad faith determination with regard to a Chapter 13 petition is a fact-intensive inquiry to be determined by looking at the totality of the circumstances. In re Lilley, 91 F.3d at 496 (“The Seventh, Ninth and Tenth Circuits have held that lack of good faith in filing is sufficient cause for dismissal under section 1307(c). We agree.”) citing In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992).

55. The Third Circuit recognizes a non-exhaustive list of factors relevant to the totality of the circumstances, including: (i) the nature of the debt; (ii) the timing of the petition; (iii) how the debt arose; (iv) the debtor’s motive in filing the petition; (v) how the debtor’s actions affected creditors; (vi) the debtor’s treatment of creditors both before and after the petition was filed; and (vii) whether the debtor has been forthcoming with the bankruptcy court and the creditors. Id.

56. "[L]ack of good faith in filing [a Chapter 13 petition] is sufficient cause for dismissal under [11 U.S.C. §] 1307(c)." In re Lilley, 91 F.3d at 496. "Bankruptcy Courts may reasonably find that bad faith exists where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose." In re Myers, 491 F.3d 120, 125 (3d Cir. 2007) (citation and internal quotation marks omitted). Petitioning for bankruptcy to thwart foreclosure proceedings or judgments is an emblematic act of bad faith. See In re Casse, 198 F.3d 327, 332-33 (2d Cir. 1999). Blizzard’s actions in this proceeding, as well as in the 2023

Bankruptcy Case, provides ample reason to believe that he initiated these bankruptcy proceedings simply to frustrate the execution of the Judgment.

57. Filing a bankruptcy for the purpose of resolving a two-party dispute under state law is a sufficient basis of a finding of bad faith requiring dismissal. See In re Liptak. 304 B.R. 820, 832 (Bankr. N.D. Ill. 2004); In re Paolini, 312 B.R. 295 307 (Bankr. E.D. 2004); see also In re Dilling, 322 B.R. 353, 360 (Bankr. N.D. Ill 2005) (dismissing a Chapter 11 bankruptcy where a debtor filed the bankruptcy solely to compromise a $10.5 billion judgment).

**C. Dismissal With Prejudice or a Refiling Bar May Be Appropriate if the Record Shows Abuse.**

58. If the evidence shows serial filings, concealment, misrepresentations, or use of bankruptcy solely to obstruct litigation, the Court may consider conditioning dismissal to prevent further abuse of the bankruptcy process. See 11 U.S.C. §§ 105(a), 349(a). Such relief is particularly appropriate here where dismissal without prejudice would merely invite another filing on the eve of the next litigation deadline or enforcement event.

WHEREFORE, P&I hereby requests that this Honorable Court enter the attached form of Order granting the Motion and dismissing the Debtor's Chapter 13 Case with prejudice and such other relief as is just and equitable.

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

Dated: September 4, 2026

By: */s/ D. Alexander Barnes*
D. Alexander Barnes, Esquire
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: 215-665-3184
E-mail: alexander.barnes@obermayer.com

*Counsel to P&I Insurance Services, LLC*