# EXHIBIT C

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION - LAW**

| | | |
|---|---|---|
| P&I INSURANCE SERVICES, LLC,<br>Plaintiff,<br>v.<br><br>DONALD BLIZZARD,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>: | No. CV-2023-003999 |

**ORDER GRANTING MOTION FOR CONTEMPT OF WRIT OF EXECUTION**

AND NOW, this 7 day of April 2026, upon consideration of Plaintiff's Motion to Hold Garnishee Molly Eckman in Contempt of the Writ of Execution ("Contempt Motion") (Dkt. No. 47), the Reply of Molly Eckman to Plaintiff's Motion for Contempt ("Reply") (Dkt. No. 59), an evidentiary hearing having taken place on March 13, 2026 (the "March 13 Hearing") at which counsel for Plaintiff P&I Insurance Services, LLC ("P&I"), counsel for Defendant Donald Blizzard ("Blizzard"), and Garnishee Molly Eckman and her counsel were present, and testimony from various witnesses was given and certain exhibits were admitted into evidence; IT IS HEREBY **ORDERED** and **DECREED** that the Motion is **GRANTED** as set forth below.

This action commenced in this Court on May 9, 2023 when Plaintiff filed a Praecipe to transfer to this Court a money judgment against Blizzard and in P&I's favor, in the amount of approximately $1.6 million. (Dkt. No. 1). As the docket reflects, Plaintiff began taking steps to execute on that judgment by, *inter alia*, issuing various writs and serving discovery in aid of execution. See Dkt. generally. With respect to the Motion at issue here, the docket reflects that on August 1, 2023, a Sheriff's Affidavit of Return was filed, reflecting that on June 27, 2023, Molly Eckman (as Garnishee of Defendant) was served by the Sheriff of Delaware County with a Writ of Execution and Garnishment by service to Colton Maccrone, the adult in charge of 838B Putnam Blvd., Wallingford, PA 19086 (the "838B Putnam Condominium"), where Molly Eckman resided. It is undisputed that Blizzard owns the 838B Putnam Condominium and that Molly Eckman is Blizzard's sister-in-law. On July 25, 2025, P&I served a Petition to Compel the Deposition of Molly Eckman (Dkt. No. 30),

representing that, *inter alia*, Molly Eckman was refusing to attend a deposition in connection with discovery in aid of execution served on her in May 2025. No response to the Petition to Compel was filed. Thereafter, in January 2026, the Contempt Motion was filed and a hearing was held on February 3, 2026.[1] At that hearing, various counsel appeared, including counsel who represented he was appearing for Molly Eckman (although as of February 3, 2026, no entry of appearance on behalf of Molly Eckman had been filed, nor had there been any filing made on behalf of Molly Eckman). As a result of the hearing on February 3, 2026, the Court directed that Molly Eckman appear for a deposition within seven days. In addition, the Court continued the hearing on the Contempt Petition to allow for, inter alia, the Court-ordered deposition to take place.

On February 4, 2026, counsel entered an appearance on behalf of Molly Eckman and Blizzard. (Dkt. No. 49). Almost three weeks later, on February 23, 2026, Molly Eckman filed a Reply to Plaintiff's Motion for Contempt (Dkt. No. 59); the Reply was verified by Molly Eckman and, for the first time since the Sheriff's filing of the Affidavit of Service on August 1, 2023, and after having been served with the Petition to Compel her deposition in this case in July 2025 (which averred that Molly Eckman had been served with the Writ of Execution on June 27, 2023), Molly Eckman took the position that, *inter alia*, the Writ of Execution was never served on her in accordance with the Pennsylvania Rules of Civil Procedure. <u>See</u> Reply ¶¶ 9 & 12.

At the March 13 Hearing on the Contempt Petition, the parties introduced testimony and documentary evidence in connection with their respective positions as to whether service was proper and whether the relief requested in the Contempt Petition was appropriate. Specifically, P&I elicited testimony from the following: Marc Zaid, Esq; Sheriff Deputy Edward Murphy; Devin Eckman; and Molly Eckman. Counsel for Molly Eckman elicited testimony from Joel Smith, Colton Maccrone, and Dillon Fitzgerald. P&I re-called Mr. Zaid and Devin Eckman as rebuttal witnesses. P&I moved for the

---

[1] The Court also addressed a separately filed Motion for Assessment of Damages against Garnishees Lee M. Herman, Esquire and Lee M. Herman, Esquire, P.C. at the hearing on February 3, 2026.

admission into evidence documents marked as P-2, P-3, P-3, P-13 and P-14 (see N.T. 3/13/26 at 17, 25, 61-62, and 109-113); there was no objection to the admission of exhibits P-2, P-3 and P-14 and those exhibits were admitted into evidence. See id. The objection to the admission of Exhibit P-13 was overruled and that exhibit (P-13) was admitted into evidence. In addition, Exhibit P-1 was marked but not offered into evidence as it appears on the Court's official docket at Dkt. No. 7; the Court takes judicial notice of the document as filed on or about June 14, 2023 at 9:04AM, as further identified by Marc Zaid at the March 13 Hearing. Counsel for Molly Eckman marked various exhibits during the March 13 Hearing but did not move for the admission of any of them. See N.T. generally.[2] The Court resolves the Contempt Petition by considering the credible testimony of witnesses, see *infra*, and the documents admitted into evidence at the March 13 Hearing (and those of which it takes judicial notice).

With respect to service, the Court rejects Molly Eckman's argument that she was not served with the Writ of Execution. As a preliminary matter, Molly Eckman did not (at any time) file preliminary objections raising a claim of improper service. As noted by (now Justice Wecht) in Korman Commercial Properties, Inc. v. Furniture.com, LLC, 81 A.3d 97, 100 (Pa. Super. Ct. 2013),

> If a garnishee claims improper service, the claim must be raised in preliminary objections filed before the garnishee enters an appearance or files answers to interrogatories. Pa. R. Civ. P. 3142(c). **Failure to raise preliminary objections waives a challenge to improper service** and "validate[s] [the] otherwise defective form of service." Cox v. Hott, 371 A.2d 921, 923 (Pa. Super. Ct. 1977).

81 A.3d at 100 (emphasis added). In addition to having waived the challenge to service by failing to file preliminary objections, Molly Eckman compounded such waiver by delaying in raising this issue until February 23, 2026, many months after learning that P&I took the position that she had been served validly with the Writ of Execution in June of 2023.

Still further, the Court finds that the testimony offered at the March 13 Hearing in support of the

---

[2] All counsel were offered the opportunity to raise any and all matters at the March 13 Hearing, including but not limited to at the conclusion of the March 13 Hearing. See N.T. at 113-14.

argument that Molly Eckman was not served was not credible and, conversely, the Court credits the credible testimony of Marc Zaid and Deputy Murphy. That is:

- Mr. Zaid testified credibly that
  - He prepared the Writ of Execution in Garnishment, directed to Molly Eckman, as well as interrogatories in aid of execution. N.T. at 14; see also Exs. P-1 & P-3.
  - He caused these documents to be served by delivering them to the Delaware County Sheriff's Office, and received back from the Sheriff's Office an Affidavit of Service. N.T. at 15-17; see also Ex. P-2. The Sheriff's Affidavit of Return reflects a date and time of service at 4:00 on June 27, 2023. Ex. P-2.
  - He did not mail the interrogatories in aid of execution to Molly Eckman. N.T. at 106.
  - He did not mail the Writ of Execution to Molly Eckman. N.T. at 106.[3]
- Deputy Murphy testified credibly that
  - He has been employed by the Delaware County Sheriff's Office for more than ten years and also works as a constable serving civil process. He has served court papers approximately a thousand or more times each year. N.T. at 22-23. In 2023, his duties involved the service of court documents. N.T. at 23.
  - He is familiar with the condo complex where the 838B Putnam Condominium is located, having done multiple services there for the sheriff and the constable. N.T. at 26. The condo units have doorbells, marked A and B; he rang the doorbell for 838B. N.T. at 27 & 29-30. He started to leave his card on the door and someone came out; Deputy Murphy asked the person for his name and was given the name Colton Maccrone, which is how he got the name to write on the Affidavit of Service. N.T. at 27-28.
  - He served the Writ of Execution and interrogatories to the garnishee, Molly Eckman, by handing the documents to an individual who identified himself as Colton Maccrone, the adult in charge at the 838B Putnam Condominium. N.T. at 24-26; see also Ex. P-14. He filed the Affidavit of Service after completing service. N.T. at 24.
- Molly Eckman, the Garnishee and the Defendant's sister-in-law, testified as follows:
  - She received Plaintiff's Interrogatories to Garnishee, marked as P-3. N.T. at 62. She provided the full and complete responses to Plaintiff's Interrogatories to Garnishee. N.T. at 61 & Ex. P-3. She acknowledged her handwriting throughout that document and the address in her handwriting at the end. N.T. at 61. She filed out the responses and put the document in the mail to Plaintiff's counsel. N.T. at 61-62.
  - She denies having ever received the Writ of Execution and asserts that the

[3] The Court also credits the representation of counsel for Plaintiff who, as an Officer of the Court, represented that no one from Plaintiff's counsel's office mailed interrogatories or the writ to Molly Eckman, and that they have no records that anything was ever mailed to her in terms of the interrogatories or the writ. N.T. at 109.

Interrogatories were mailed to her in an envelope. N.T. at 65-66. This testimony is contradicted by other, more credible testimony in the record, including but not limited to the testimony of Deputy Murphy, Marc Zaid, and the representations of counsel for Plaintiff, as an Officer of the Court. See *supra* n. 3.

- She and her boyfriend/ex-boyfriend Colton Maccrone were living at the 838B Putnam Condominium at the relevant time. N.T at 63-64.

- Colton Maccrone, the Garnishee's boyfriend who lived at the 838B Putnam Condominium at the relevant time and worked at Boedco, Inc., testified about his whereabouts on June 27, 2023 as follows:

  - In June 2023, Boedco employees documented and submitted their time by "keep[ing] our own hours." N.T. at 96. He would document which days he worked and/or which days he had off "just on a piece of paper"—"We write down our hours at that time, each day to keep track and everyone keep track of everyone's hours." N.T. at 96. At the same time, he described being a foreman for the company, "so I keep track of everyone's time to make sure everyone's you know, key, on you know, on point." N.T. at 96. He describes himself as being "very bad at putting my hours in at that time." N.T. at 97. His boss, Mr. Smith, "would, you know, text and make sure that we had our hours in." N.T. at 97. This testimony is internally inconsistent. There were no "pieces of paper" provided at the March 13 Hearing.

  - He sent a text to his boss, Joel Smith, at 5:03 pm on June 27, 2023, telling Smith what his hours were for payroll purposes, stating that "our hours go from Tuesday to Thursday." N.T. at 78. This testimony is inconsistent with that of Mr. Smith. See *infra*.

  - The week before June 27, 2023, he had hurt his knee and feet, and "later in the day" on Friday, June 23, 2023, he got treated for the injury. N.T. at 78-79. On that day, he "took off at, you know, probably 3:00 to go get – get a steroid pack". N.T. at 79. He asserts that this is why his hours for that week were less than 40 hours. N.T. at 79. The Court notes that Mr. Smith testified that Mr. Maccrone was paid for 32.5 hours for that week, see *infra*; as such, seven and a half hours of a 40-hour workweek are unaccounted for.

  - Monday, June 26, 2023 was a "memorable" day "because that was when the giant spider was in the house and that was very memorable . . . because we had to worry about where it was the rest of the time." N.T. at 79.

  - During the week in question and the week before, he was driving his apprentice, Dillon Fitzgerald, to work, since Fitzgerald's truck was broken down. N.T. at 76.

  - He maintained that he recalls working on Tuesday, June 27, 2023, getting to the jobsite at 8:00, describing himself as "usually very, you know, punctual." N.T. at 74-75.

  - When asked when he left the jobsite on Tuesday, June 27, 2023, he offered: "Usually around 4:45. So 4:45 would be that day, especially on a Friday. Friday is usually later than normal." N.T. at 75. He followed up as follows: "Well, sorry Tuesday—Fridays are usually late but Tuesdays are also a pretty big day too. . . . Because Monday's the day you trying to skip out. Tuesday you got to stay, you know, catch up for the rest of the week." N.T. at 75-76. Ultimately, he said he was "on the job" from 8:00 until 4:00 on Tuesday, June 27, 2023. N.T. at 79.

- When he got home on June 27, 2023, he opened the door and found an envelope laying on the ground; he did not open it; he saw his name, Molly's name, and then the apartment, and then an address underneath; he picked it up, took it upstairs and "maybe an hour later or two" he "took the trash out and just threw it out," thinking it was junk mail. N.T. at 84-86, 95. The Court finds this testimony to lack any credibility.[4]

- He denied ever in his lifetime having received a document from an officer. N.T. at 77. This testimony is contradicted by the credible testimony of Deputy Murphy, as described hereinabove.

• Dillon Fitzgerald, another employee of Boedco, testified as follows:

- From June 22 through June 28, 2023, he worked with Colton Maccrone. N.T. at 99-100.

- During that time period, Colton Maccrone provided transportation for him because Mr. Fitzgerald's truck was in the shop. N.T. at 100-02.

- They were typically on the jobsite from 8:00 to 4:45. N.T at 101.

- He and Mr. Maccrone arrived in the driveway of the Putnam Boulevard complex "roughly around 4:50, 5:00", which was a five- to ten-minute drive from the jobsite, where they had been from 8 to 4:45. N.T. at 102. There was no testimony as to why, if Mr. Maccrone was providing transportation for Mr. Fitzgerald, they were driving back to Mr. Maccrone's residence at the 838B Condominium Property after work; as such, the Court cannot credit this testimony.

- Mr. Fitzgerald recalls Mr. Maccrone taking a day off "previous to that day" . . . "earlier in the week." N.T. at 102. He also testified that he believed Mr. Maccrone took off Thursday or Friday. N.T. at 105. This testimony is internally inconsistent. Mr. Fitzgerald stated further that Mr. Maccrone "usually comes in and out without having like knee problems" and did not recall him leaving early. N.T. at 103.

- Mr. Fitzgerald submitted his time to his employer via text, sending the hours that he had worked, which was 40 hours a week. N.T. at 103. There was no way to tell what days of the work-week an employee had worked—you just sent the amount of hours worked at the end of the pay cycle. N.T. at 103. This testimony further corroborates the conclusion that none of the witnesses stated consistently or conclusively on what day or days (or on what hours of which day) Colton Maccrone did not work during the pay period from June 22, 2023 to June 28, 2023.

• Joel Smith, who is the sole shareholder of Boedco Incorporated and has employed Colton Macrone for more than ten years, testified as follows:

- He identified a paystub for Colton Maccrone for the time period June 22, 2023 to June 28, 2023. N.T. at 34.[5] That paystub reflected that Maccrone worked 32.5 hours during that "week", so the paystub reflected that Maccrone took either a day or seven and a

[4] Mr. Maccrone postulated that a neighbor ("Tony", whom Mr. Maccrone described multiple times as "slightly a little slower") collected the mail. See N.T. at 91-94. The Court rejects all such testimony as entirely speculative.

[5] The Court takes judicial notice that June 22, 2023 was a Thursday and June 28, 2023 was a Wednesday.

half hours off during that 40-hour work-week. N.T. at 34-35.

- He could not testify for certain what day Maccrone took off during that time period. N.T. at 35 & 37-38. He has no written notice that Maccrone was taking off on June 27, 2023. N.T. at 37-38.
- Employees are expected to be on the jobsite from 8 to 4:30 every day. N.T. at 35-36.[6]
- Boedco weekly pay periods run from Wednesday of one week to Tuesday of the following week; Smith gets the employees' hours, calls them in on Wednesdays, and the employees are paid on Friday. N.T. at 34-35.

The Court concludes that the documents admitted into evidence at the March 13 Hearing and the credible testimony of various witnesses, including but not limited to Deputy Murphy and Marc Zaid, support the conclusion that Molly Eckman was served with the Writ of Execution and Interrogatories in aid of execution, as reflected on the Affidavit of Service filed on August 1, 2023. Such service, by Sheriff upon an adult member of the household where the Garnishee resided, at the Property owned by the Defendant, was consistent with all applicable Pennsylvania Rules of Civil Procedure, including but not limited to Pa. R. Civ. P. 3111(a) (requiring writ of execution to be served upon a garnishee by a sheriff). The Court rejects the suggestion that service was not accomplished as described by Deputy Murphy and the documents in evidence, and rejects the various statements concerning Mr. Maccrone's whereabouts on June 27, 2023 and in the days prior. Put simply, the witnesses' testimony attempting to establish that Mr. Maccrone was not at the 838B Putnam Condominium on June 27, 2023 at 4 pm was not only at times internally inconsistent, contrived, and improbable, but also seemingly orchestrated by counsel (see, e.g., N.T. at 35-37, 75-76, 78-79, 83-84, 101-02, 104-05) and/or motivated by interests of the witnesses among themselves.

Having rejected the belated service argument—on waiver and other grounds, see *supra*—the Court considers whether the relief requested in the Contempt Petition should issue. Under the applicable Rules, service of the writ attaches *all property of the defendant in the possession of the garnishee*, including property that comes into the garnishee's possession after service. Pa. R. Civ. P.

[6] Counsel for Molly Eckman suggested several times to Mr. Smith that employees stayed longer, after 4:30. Each time, Mr. Smith confirmed that the hours were 8-4:30, although there could be exceptions "where they finish something early, there's nothing left to do. There could be times where they stay late." N.T. at 35-36.

3111(b). Service imposes upon the garnishee an injunction against paying any debts of the defendant or delivering any attached property to the defendant. Pa. R. Civ. P. 3111(d). Violation of the mandate and injunctive orders of the writ may be punished as a contempt. Pa. R. Civ. P. 3111(e). In this case, the Writ of Execution directed the Garnishee, Molly Eckman to attach the property of the Defendant, in the possession of MOLLY ECKMAN, 8383 Putnam Boulevard, Wallingford, PA 19086 as Garnishee, which property was described as ALL RENTS PAYABLE, LEASE PAYMENTS PAYABLE, CASH, CASH EQUIVALENTS, ACCOUNTS, CERTIFICATES, DEPOSITS AND INSTRUMENTS, to satisfy the judgment against the Defendant as set forth in the Writ. The credible evidence from the March 13 Hearing with respect to whether Molly Eckman possessed or came in possession of any "rents payable, lease payments payable, cash, cash equivalents, accounts, certificates, deposits, or instruments" that were attachable as property of the Defendant is set forth below.

- Devin Eckman is the Defendant's wife who manages the household finances for the Defendant. N.T. at 40-41. She testified as follows:
    - Molly Eckman, the Garnishee, is her sister. N.T. at 40-41.
    - The Defendant owns the 838B Putnam Condominium. N.T. at 41.
    - She (Devin Eckman) and the Defendant used to live in the 838B Putnam Condominium. N.T. at 42.
    - After she and the Defendant moved out of the 838B Putnam Condominium, Molly Eckman and Colton Maccrone (Molly Eckman's boyfriend) moved in. N.T. at 42-43.
    - Molly Eckman has lived at the 838B Putnam Condominium continuously since 2021, through the date of the March 13 Hearing. N.T. at 43.
    - For the entire time that Molly Eckman has lived at the 838B Putnam Condominium, Devin Eckman collected rent from Molly Eckman, via Venmo, and put the money into Devin Eckman's joint account with the Defendant and paid their mortgage with the money. N.T. at 44 & 52.
    - Molly Eckman has never missed a rent payment and has continuously Venmoed Devin Eckman $1,175 each month. N.T. at 44-45.
    - There is no written lease with Molly Eckman for the 838B Putnam Condominium, but Devin Eckman's understanding was and is that Molly Eckman is renting the 838B Putnam Condominium and living there. N.T. at 48-49. Molly Eckman could have lived at the 838B Putnam Condominium for free; only Colton Maccrone "owed" the Defendant

the rent. N.T. at 52.

- Molly Eckman continued to pay rent via Venmo even when Colton Maccrone moved out of the 838B Putnam Condominium in October/November 2025. N.T. at 49, 56, 58.

- The money that Devin Eckman was collecting from Molly Eckman was for the use (by Molly Eckman and/or Colton Maccrone) of the 838B Putnam Condominium. N.T. at 53-55.

- Molly Eckman (the Garnishee, the Defendant's sister-in-law, and Devin Eckman's sister) has lived at the 838B Putnam Condominium at all times relevant to the Contempt Petition, at times together with her boyfriend/ex-boyfriend, Colton Maccrone. N.T. at 63-64. She testified as follows:

  - Every month, Colton Maccrone would give her money to pay rent and she would Venmo that money to Devin Eckman. N.T. at 64.

  - She understood that Devin Eckman was acting on Defendant Blizzard's behalf and was collecting rent for the 838B Putnam Condominium. N.T. at 64.

  - Some of the Venmo payments she made to Devin Eckman were considered by her (Molly Eckman) to be reimbursements to Colton Maccrone for shared expenses (N.T. at 66-67); this testimony makes no sense in light of the other testimony (including her own) that the monthly payments of $1,175 constituted rent for the 838B Putnam Condominium.

  - She made these monthly $1,175 payments to Devin Eckman the entire time from when she moved into the 838B Putnam Condominium until this year, even after Colton Maccrone permanently moved out of the 838B Putnam Condominium in October 2025. N.T. at 64-65.

- Colton Maccrone, Molly Eckman's boyfriend/ex-boyfriend, testified that he was the sole tenant under the lease for the 838B Putnam Condominium and had the obligation to pay rent. N.T. at 80. He testified further that Molly Eckman had no obligation to pay rent, but she had a Venmo app and Venmoed payments, including his rent, to Devin Eckman. N.T. at 81.

The evidence supports the conclusion that rent payments for others' use of the property owned by the Defendant—the 838B Putnam Condominium—were made to the Defendant via his wife, who received such payments from her sister (the Garnishee) and deposited them into an account co-owned by the Defendant, which funds were then used to pay the mortgage for the property. The suggestion that, because Molly Eckman was not "obligated" to make any of the Venmo payments, she has (or had) no obligation to convey the rent payments to P&I, lacks merit. Molly Eckman's Reply, which advances such a proposition, lacks citation to any authority purporting to absolve her from the obligation to comply with the Writ. The applicable Rule itself certainly does not support the

argument—it states that

> Service of the writ [of execution] upon the garnishee shall [] subject the garnishee to the mandate and injunctive orders of the writ restraining the garnishee from paying *any* debt to or for the account of the defendant *and from delivering any property of the defendant which may be attached under these rules to anyone except the sheriff* or otherwise disposing thereof until further order of the court or discontinuance or termination of the attachment.

Pa. R. Civ. P. 3111(d) (emphasis added). The Rule refers to *any* debt to or for the account of the defendant, not the *garnishee's* debt. The debt to or for the account of Blizzard was rent Blizzard received for the use of his property—the 838B Putnam Condominium. The overwhelming evidence is that Molly Eckman transmitted to *Devin Eckman* (*not* to the Sheriff or P&I) monthly payments in the amount of $1,175 for the use of the 838B Putnam Condominium. Where rents are paid monthly, execution of a judgment through garnishment of the rent owed is an "appropriate means for enforcing a final decree or judgment for the payment of money." <u>Brodsky v. Philadelphia Athletic Club</u>, 419 A.2d 1285, 1288 (Pa. Super. Ct. 1980). Once she was served with the Writ of Execution on June 27, 2023, Molly Eckman was obligated to refrain from making the rental payments to Devin Eckman; put differently, she was enjoined from paying any debt—including but not limited to the monthly rent for the use of Defendant's 838B Putnam Condominium—to the Defendant, either directly or indirectly through his wife, Devin Eckman. <u>See</u> <u>Korman</u>, *supra*, at 100. In continuing to make monthly payments for the benefit of Defendant after being served with the Writ of Execution, Molly Eckman violated the injunctive order of the Writ of Execution. Such conduct constitutes contempt.

Last, the Court considers Plaintiff's request for an award of reasonable attorneys' fees. <u>See</u> N.T. at 109-13. In so doing, the Court acknowledges counsel's representations as an Officer of the Court, but has also reviewed P-13, which reflects a total sum of $17,990.40 incurred between May 6, 2023 and the March 13 Hearing in connection with various tasks Plaintiff undertook to execute on the judgment it obtained against the Defendant. The Court finds that the expenses for the steps Plaintiff took between May 6, 2023 and December 10, 2025, although undertaken after the Writ of Execution was served on Garnishee Molly Eckman, should not be borne by Molly Eckman because they relate

to activities seemingly unrelated to pursuing a recalcitrant garnishee; the entries *after* December 10, 2025 (beginning with the 0.3 entry that references the need for a motion for contempt), however, are expenses for which Molly Eckman should account, as they were occasioned by her contempt of her obligations under the Writ of Execution; the value of those entries totals $12,089.87, and relates solely to the extensive efforts Plaintiff was required to undertake as a result of Molly Eckman's recalcitrance in complying with her obligations under the Writ of Execution and other discovery in aid of execution without Order of the Court.

For the reasons set forth above, IT IS HEREBY **ORDERED** and **DECREED** as follows:

1. The Contempt Motion is **GRANTED**.
2. **No later than April 27, 2026**, Garnishee Molly Eckman shall pay to Plaintiff P&I Insurance Services, LLC the sum of **$50,864.87**, reflecting (i) the $38,775 in rent payments that she made to Defendant Blizzard via Devin Eckman, in the amount of $1,175 per month for the 33 months since service of the Writ of Execution, rather than to the Sheriff and/or Plaintiff, and (ii) $12,089.87 in attorney fees.
3. Garnishee Molly Eckman shall make all future rent payments pertaining to the use of Defendant's property—the 838B Putnam Condominium—to Plaintiff P&I Insurance Services, LLC.

BY THE COURT:

KELLY D. ECKEL, J.